IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Kenneth S. Majors, #147514, ) | |
| ) | Civil Action No. 8:04-22432-HFF-BHH |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Philip Thompson, Thomas Fox, ) | |
| and Deborah Hipp, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On March 4, 2005, the defendants filed a motion for summary judgment. By order of the court filed March 9, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a response in opposition to the motion of March 11, 2005, and he filed a supplemental response on March 28, 2005. On August 1, 2005, the plaintiff filed an amended response in opposition to the motion for summary judgment.

**FACTS PRESENTED**

At the time of the alleged incident, the plaintiff was a pretrial detainee at the J. Reuben Long Detention Center in Horry County ("Detention Center").  He alleges that on August 14, 2004, he fell while coming out of the shower and injured his back and wrist.  He alleges that he informed an officer of his injury and that a nurse came and examined him and gave him ibuprofen for the pain and swelling.  He alleges that he was told that he would be able to see defendant Hipp, a family nurse practitioner at the detention center, when she came in.  The plaintiff alleges that defendant Hipp examined him five days later, on August 19, 2004, and although he told her that he thought his wrist was broken, she said "there is nothing wrong with it, you will be fine."  The plaintiff alleges that he asked her how she could know without an x-ray, and she told him that if he wanted an x-ray he would have to pay for it (comp. at 3)

The plaintiff alleges that he saw defendant Hipp again on September 16, 2004, and even though he told her that he was in pain and could not bend his wrist, she told him that there was nothing wrong with his wrist (comp. at 3-4).  The plaintiff's complaint is dated September 22, 2004, and he alleges that as of that date "I cannot bend my wrist but the pain is not as bad leaving me to believe that it has been healing broken and will have to have surgery to correct." (comp. at 4).

The affidavits and medical records submitted by the defendants reveal that the plaintiff continued to complain of pain in his wrist over the next two months and was examined by medical personnel several times.  According to the affidavit of Deborah Hipp, on November 30, 2004, the plaintiff was sent to the hospital for x-rays, where it was determined that he had a schapoid fracture, of a chronic nature, of the left wrist (Hipp aff. at 7).  The plaintiff was referred to an orthopedic clinic and on December 30, 2004, he underwent surgery to repair the fracture (Hipp aff. at 8).

2

The plaintiff brought this action against Phillip Thompson, the sheriff of Horry County; Thomas Fox, the director of the detention center; and Deborah Hipp, the nurse practitioner at the detention center. He seeks damages in the amount of $100,000 "for pain and suffering, mental anguish, loss of use and punitive damages."

## **ANALYSIS**

### *Motion for Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not

3

rest on the allegations averred in her pleadings; rather, she must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiffs position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

### *Medical Indifference Claim*

Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. §1983 as constituting cruel and unusual punishment contravening the Eighth Amendment. " *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration. *Id.* at 102. This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id*. at 105 To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Rogers v. Evans*, 792 F.2d 1052, 1058 (5th Cir. 1986).

Because the plaintiff was a pretrial detainee rather than a prisoner under a judgment of conviction, he is afforded the protections of the due process clause of the Fourteenth Amendment rather than the prohibition against cruel and unusual punishment found in the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hill v. Nicodemus*, 979 F.2d 987 (4th Cir. 1992). Where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions of his confinement amount to punishment before a proper adjudication of guilt. *Hill*, 979 F.2d at 990. Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense. *Id.* at 991, citing *Bell*, 441 U.S. at 535. For the punishment, *i.e.*, the alleged unconstitutional condition of confinement, to be sufficiently serious, it must fail to meet the minimal civilized measure of life's necessities. *See Rhodes v. Chapman*, 452 U.S. 337, 341 (1981).

The plaintiff here argues that the 3½-month delay between the date of his injury and the date when he was sent for x-rays constitutes evidence of deliberate indifference to a serious medical need. The defendants argue that even if defendant Hipp incorrectly diagnosed the plaintiff's medical condition, there is no showing that she was deliberately indifferent. However, even the defendants' own records show that the plaintiff consistently complained of pain in his wrist despite the clinical findings noted by the nurse. Moreover, because the plaintiff ultimately was found to have a fracture in his wrist which required surgery, it is reasonable to assume that the wrist was broken during the entire time the plaintiff was requesting treatment. The defendants argue that because the fracture was identified as a "chronic" rather than an "acute" injury, it could not have been discoverable during the plaintiff's examinations from August to November. This argument seems to miss the point, which is that if the plaintiff had been x-rayed in August, the fracture possibly could have been discovered and treatment could have been started much earlier. The defendants also argue that because there is evidence that the plaintiff had a preexisting injury to his wrist, he cannot demonstrate medical indifference by the defendants. However,

the court notes that the question is whether or not the plaintiff has received adequate medical treatment, regardless of how or when he was injured.

The plaintiff began complaining of pain in his wrist in August and was not sent for an x-ray until almost four months later, at which time it was discovered that he had a fracture. The defendants argue that the plaintiff received adequate medical care and that all of his examinations yielded normal results, such as no swelling, no bruising and normal range of motion. The plaintiff submitted as an exhibit a list of questions which he submitted to Dr. Stewart Haskin, Jr. In this form, purportedly signed by Dr. Haskin and witnessed by a third party, the question "By using a CAT scan were you able to date the time of the fracture?" was answered "No." Moreover, other answers to questions indicate that "with a fracture of this type," it would be possible for swelling to start to disappear and bruising to be unnoticeable within a one-week time frame and for there to be some range of motion a week later (ex. G, plaintiff's response in opposition to summary judgment, filed March 11, 2005).

Under these facts, there is a genuine issue of material fact as to whether defendant Hipp was deliberately indifferent to the plaintiff's medical care. Accordingly, as to defendant Hipp, summary judgment is denied.

***Respondeat Superior***

Defendants Thompson and Fox argue that they cannot be held liable in their supervisory capacities. The doctrine of *respondeat superior* generally is inapplicable to §1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977). A supervisor may be held liable for the constitutional violations committed by his subordinates, but only if the plaintiff can show that the supervisor tacitly authorized, or was deliberately indifferent to, the subordinates' actions. *Shaw v. Stroud*, 13 F. 3d 791, 798 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994). Supervisory

liability for constitutional injuries is not imposed on a *respondent superior* basis. *Id.* In order to hold a supervisor liable for a constitutional injury inflicted by a subordinate, a plaintiff must establish three elements: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Id.* at 799. Furthermore, a plaintiff must generally produce evidence that the conduct complained of is prevalent or has been repeated on several occasions, and that the supervisor has refused to act "in the face of documented widespread abuses." *Id.* (citing *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

As to defendant Thompson, the sheriff of Horry County, the plaintiff has not presented any substantive evidence that he had any knowledge of any actions of defendant Hipp. The plaintiff only states that defendant Thompson is "responsible for everything that happens in this jail" (comp. at 4). The plaintiff has not shown that Sheriff Thompson caused, contributed to, or participated in the alleged deliberate indifference to the plaintiff's medical condition. There is no evidence that he has any direct involvement in the operation of the detention center. Therefore, as to defendant Thompson, his motion for summary judgment should be granted.

Defendant Fox is the director of the detention center. The plaintiff asserts that he "wrote him through the mail but he has failed to answer or do anything about the situation." The plaintiff has submitted no evidence that he had any contact with defendant Fox, or that Fox participated in or had direct knowledge of his medical treatment. There is a copy of an investigative report in the file, dated September 13, 2004, indicating that Lt. Robert Orlowski investigated the plaintiff's complaint against the medical staff for not

7

treating his wrist injury. There is no indication that defendant Fox was aware of, or participated in this investigation. Accordingly, the plaintiff's conclusory allegations are insufficient to withstand summary judgment and impose supervisory liability as to defendant Fox. Accordingly, as to defendant Fox, summary judgment should be granted.

***Immunity Defense***

The defendants, as state officials and employees acting in their official capacities, are protected by Eleventh Amendment immunity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66-71 (1989). The Supreme Court has stated:

> Section 1983 provides a forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity.

*Id.* at 66. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is not different from a suit against the State itself...." *Id.* at 71 (citations omitted). Thus, as to this action brought against the defendants in their official capacities, the complaint fails to state a cause of action and must be dismissed.

The defendants further contend that they are entitled to qualified immunity for the claims brought against them in their individual capacities.[1] In *Wilson v. Layne*, 526 U.S. 286, 119 S.Ct. 1692, 1696-97 (1999), in addressing qualified immunity, the United States Supreme Court held "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *See also Suarez*

---

[1] "To avoid excessive disruption of government, a qualified immunity is recognized to protect government officials performing discretionary functions from civil damage suits 'insofar as [the officials] conduct does not violate clearly established rights of which a reasonable person would have known." *Porterfield v. Lott,* 156 F.3d 563, 567 (4th Cir. 1998)(internal quotation marks omitted)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

8

*Corp. Indus. v. McGraw*, 202 F.3d 676 (4th Cir. 2000).  Further, the Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public."  *Id.*  The question, therefore, is whether a violation of a constitutional right has been demonstrated.  As to defendants Thompson and Fox, because no constitutional violation by them has been demonstrated, it is unnecessary to reach a determination as to whether or not qualified immunity protects them from liability in this instance.

As to defendant Hipp, as discussed above, there exists a genuine issue of material fact as to whether her conduct constituted deliberate indifference to the plaintiff's medical condition.  Because the plaintiff's right to receive adequate medical care was clearly established at the time of the alleged incident, qualified immunity cannot shield the defendant Hipp from liability at this stage of the proceedings.

### *Motion for Reconsideration of Motion for Appointment of Counsel*

The plaintiff's original motion for appointment of counsel was denied by this court on June 15, 2005.  On July 5, 2005, the plaintiff filed a motion for reconsideration of this order.  On July 11, 2005, the defendants filed a response to the motion for reconsideration.

The law is clear that there is no right to appointed counsel in §1983 cases. *Hardwick v. Ault*, 517 F.2d 295 (5th Cir. 1975).  However, the court is granted the power to exercise its discretion to appoint counsel for an indigent in a civil action.  28 U.S.C. §1915(d); *Smith v. Blackledge*, 451 F.2d 1021 (4th Cir. 1971).  When exercising its discretion to appoint counsel in a civil action, the appointment "should be allowed only in exceptional cases."  *Cooks v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975).

This court has recommended that the motion for summary judgment as to defendant Hipp be denied. Should the district court adopt this recommendation, a scheduling order will be entered and the case will be set for a jury trial. The plaintiff has no legal training and limited resources with which to prepare for a jury trial. Under the circumstances, appointment of counsel is justified. *See Whisenhunt v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984)(if it is apparent to the district court that a *pro se* litigant has a colorable claim but lacks capacity to present it, the court should appoint counsel to assist him).

Accordingly, this court recommends that, should the district court adopt the recommendation of this court denying summary judgment, the plaintiff's motion for appointment of counsel should be granted.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the motion for summary judgment by defendants Thompson and Fox be granted, and that the motion for summary judgment by defendant Hipp be denied.

It is further recommended that, if the above recommendation is adopted by the District Court, the plaintiff's motion for reconsideration of motion for appointment of counsel be granted and counsel be appointed to represent the plaintiff in this action.

s/Bruce H. Hendricks
United States Magistrate Judge

September 30, 2005

Greenville, South Carolina

10